**FILED**
**Jun 05, 2024**
**12:42 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT GRAY

| | | |
|---|---|---|
| **GARY DINGUS,** | ) | **Docket Number: 2022-02-0435** |
| Employee, | ) | |
| v. | ) | |
| **GRAND PIANO AND FURNITURE** | ) | |
| **COMPANY,** | ) | **State File Number: 80634-2021** |
| Employer, | ) | |
| and | ) | |
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY,** | ) | **Judge Brian K. Addington** |
| Carrier. | ) | |

## COMPENSATION ORDER

The Court held a compensation hearing on May 22, 2024, to determine if Mr. Dingus suffered a compensable injury, and if so, the benefits to which he is entitled. Grand Piano asserted that Mr. Dingus's willful failure to wear a safety device bars his claim. Based on the preponderance of the evidence, the Court holds that Mr. Dingus suffered compensable injuries arising primarily out of and in the course and scope of his employment. He is entitled to the benefits requested.

### Claim History

Mr. Dingus began working for Grand Piano in July 2021 as a picker/forklift operator. His job required him to stock and pull various types of furniture from tall warehouse shelving to fulfill customer orders. He frequently operated a standing forklift to reach items on higher shelves.

The forklift at Grand Piano used a tether system that attached to a body harness by a carabiner to prevent falls. To attach the tether, a carabiner is hooked to a metal D-ring on the back of the harness.

1

Mr. Dingus is a certified forklift operator and used forklifts in former jobs. He testified that he began operating the forklift on his second day of work for Grand Piano and always wore the harness.

On his third day of work, he pulled several mattresses from shelving. As he exited the forklift, the tether "snapped and came off." He reported the incident to David Nottingham (warehouse manager), Randy Finks (assistant warehouse manager), and "Faye." He said he explained to them that "you think you're hooked, but you're not."

Mr. Dingus completed Grand Piano's forklift operator safety training on October 9, 2021.[1] He also signed a safety harness policy, which states: "All employees operating the pickers or riding a picker are required to wear the harness and be sure that it is attached to the tether. Failure to wear the safety harness and tether will require a written reprimand." The agreement came with a warning that two violations within 12 months would result in termination.

On October 16, Mr. Dingus was working with Mr. Nottingham, and his last task for the day was placing a sofa on the top shelf. However, he had a problem with his inventory scanner/tracker, so he attached the tether to his harness and drove the forklift to Mr. Nottingham on another aisle for assistance. Once it was fixed, Mr. Dingus returned to the shelf aisle where he was placing the sofa. He stated that his harness was still attached to the tether when he elevated the lift and attempted to place the sofa on the shelf. He explained he knew it was attached, because the tether was behind him, hooked to his harness, and followed him as he worked.

Once he reached the top shelf, he tried to maneuver the sofa when he suddenly "flipped off." He fell approximately 20 feet to the ground, injuring his back and left leg. He was disoriented and did not know the names of the first two coworkers who came to assist him before Mr. Finks arrived. He stated that Mr. Finks brought him a pillow to prop his head and he was facing the forklift. While he lay on the ground, he saw Mr. Nottingham climb the shelves and lower the forklift before the ambulance arrived.

Mr. Dingus testified that before the accident, Grand Piano never disciplined him for failure to use safety equipment or for any other reason. Also, he never intended to get on the lift without being properly tethered. He stated that he wanted to return to work for Grand Piano but was terminated.

Grand Piano denied the claim and asserted that Mr. Dingus's failure to wear a safety device was what caused his injuries. It offered testimony of three witnesses, Mr. Nottingham, Mr. Fink, and Leslie Salyers.

---

[1] A certificate of completion in the record was issued on October 18; two days after the injury.

Mr. Salyers testified about Grand Piano's proper safety harnessing policy and its enforcement of that policy. He also testified to written warnings and safety violations within Grand Piano. In the past, Mr. Salyers has issued safety violation warnings for an employee wearing earbuds, the unauthorized use of a safety knife, a failure to remove keys from the ignition of a company truck, failure to use the parking brake, and falsifying a driver inspection report. However, Grand Piano did not offer any warnings or separation notices for failure to properly use tethering equipment on a forklift. Mr. Salyers did not see Mr. Dingus operate the forklift without using the tether. But he stated any warning would have come after he returned to work.[2]

Mr. Fink testified he was the first person to talk to Mr. Dingus after the fall. He stated that he asked Mr. Dingus what caused him to fall, and Mr. Dingus responded, "I f----d up." Mr. Fink said that employees know to tether when on the forklift and that Mr. Dingus's harness was not defective. However, Mr. Fink testified that he was never concerned that Mr. Dingus violated safety rules, and he never saw him operate the forklift without using the tether.

Mr. Nottingham testified that double-checking the harness tether is part of the safety training. He demonstrated the tugging motion used to ensure a proper latch. He said that he never observed Mr. Dingus improperly hooked or not using the tether. He further stated that when tethered properly, the safety system prevents the wearer from going within one foot of the platform edge. He agreed with Grand Piano's other witnesses that the harness webbing did not appear to be stressed. He also testified about a photo of the forklift and footprint on the cardboard box that was on it. He suggested the footprint was made by Mr. Dingus right before he fell, thus proving that he was not tethered to the forklift.[3]

Grand Piano's witnesses all testified that the webbing on the harness did not show any stress marks. They asserted that if he had been tethered to the webbing, it would have evident stress marks.

As a result of the fall, Mr. Dingus suffered left-tibia and lower-back fractures. Both required surgery including hardware.

---

[2] Grand Piano sent Mr. Dingus a separation letter in January 2002, stating it could no longer hold his job open due to "current business conditions." The letter also said he could reapply for employment with Grand once he was released from treatment.

[3] Photos of the forklift were introduced at the hearing. The photos showed the forklift in a different location from where the injury occurred, and no one could testify who moved it or why. The Court does not credit any testimony about the photos.

Orthopedist Dr. Larry Waldrop performed Mr. Dingus's ankle surgery. On February 8, 2022, he released him on restrictions of weight-bearing as tolerated.[4]

Dr. Selma Kominek treated Mr. Dingus's back injury. She placed him at maximum medical improvement on September 15, 2023. Her final report assigned a 12% impairment. She further noted that Mr. Dingus had been unable to work since the date of the injury through the present.

Orthopedist Timothy McGarry examined Mr. Dingus's left leg and ankle in December 2023, and he reviewed his treatment records from Dr. Waldrop. Dr. McGarry determined that Mr. Dingus suffered a 3% impairment from the fall.

Mr. Dingus incurred $414,149.20 in medical bills from the injuries. He testified he could not undergo physical therapy because he does not have insurance. He also has child support arrears totaling $15,201.52.

## Findings of Fact and Conclusions of Law

### *Compensability*

At a compensation hearing, Mr. Dingus must show he suffered an injury that arose primarily out of and in the course and scope of employment by the preponderance of the evidence. Tenn. Code Ann. §§ 50-6-102(12), 50-6-239(c)(6) (2023).[5]

Grand Piano agreed that Mr. Dingus fell at work. The preponderance of the evidence shows Mr. Dingus was injured at work while performing his picker job.

Rather, Grand Piano asserted that Mr. Dingus's claim should be denied because he willfully failed to use a safety device under section 50-6-110(a)(4). It specifically argued that he failed to use a tether, violating its rule. It states, "All employees operating the pickers are required to wear the harness and to be sure the harness is attached to the tether." Failure to do so could lead to termination.

This affirmative defense consists of four elements: (1) the employee's actual, as opposed to constructive, notice of the rule, (2) the employee's understanding of the dangers involved in violating the rule, (3) the employer's bona fide enforcement of the rule, and (4)

---

[4] Dr. Waldrop's medical records stated that Mr. Dingus reported rolling his left ankle a few days before the office visit. Dr. Waldrop diagnosed a mild sprain, and his work restrictions may have been related to the sprain.

[5] At the end of Mr. Dingus's proof and end of its proof, Grand Piano moved for an involuntary dismissal of his claim. The Court took the motion under advisement to review all the exhibits and Dr. Kominek's deposition. The Court denies the motion because no one disputed that Mr. Dingus fell at work, and it was Grand Piano's burden to prove its affirmative defense.

the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utils.,* 368 S.W.3d 442, 453 (Tenn. 2012).

Here, Mr. Dingus knew about the rule, and he understood the dangers in violating it. Grand Piano proved bona fide enforcement of safety rules, as it presented evidence that it warned or terminated employees who violated them. However, it did not warn or terminate Mr. Dingus. Mr. Salyer's testimony proved that the appropriate time to issue the warning would have happened after he returned to work.

Grand Piano's defense fails for three reasons.

First, the preponderance of the evidence does not show that Mr. Dingus violated the rule. Grand Piano asserted that Mr. Dingus did not attach the tether to the harness ring or the harness strap. It argued that he must not have attached the tether to the ring because he fell and the harness webbing showed no stretch marks. However, the rule only requires attachment to the harness and not the harness ring. Mr. Dingus credibly testified that he attempted to attach the tether to the harness and thought he was attached, because the tether followed him. Otherwise, the tether would noticeably hang down in front of the picker's steering wheel.

Second, even if Grand Piano had proven that he violated the rule, Mr. Dingus still presented the valid excuse that he was tethered to the forklift, just not tightly enough to prevent the fall. This excuse seems valid, as the tether had already loosened once previously. The preponderance of the evidence does not show he willfully ignored his obligation to tether to the forklift.

Third and finally, Grand Piano relied on *Mitchell* and *Hawks v. Christian*, No. M2015-02200-SC-R3-WC, 2016 Tenn. LEXIS 382 (Tenn. Workers' Comp. Panel June 20, 2016), for the proposition that Mr. Dingus's claim should be denied. These authorities are distinguishable. In both cases, the injured worker admitted ***to removing*** gloves and a tether, respectively, and they suffered serious injuries. Both claims were denied by the courts. However, Mr. Dingus never admitted that he removed his safety device. And although some contrary evidence exists, no one from Grand Piano actually saw Mr. Dingus untethered when he was operating the lift or observed his fall. Therefore, the Court credits Mr. Dingus's version of events.

The Court does not accept the speculation of Grand Piano's witnesses as to the cause of the fall. They did not see what happened. They relied in part on information they observed after the picker had been moved. And they did not have the appropriate level of expertise to testify to the lack of stress shown on the harness.[6]

---

[6] Grand Piano did not lay a sufficient foundation for their expert knowledge in the strength or stressing of harness straps.

5

For all these reasons, the Court rejects Grand Piano's defense and holds that Mr. Dingus has shown that his injuries arose primarily out of and in the course and scope of his employment.

*Benefits*

Because Mr. Dingus proved a compensable injury, Grand Piano must provide necessary and reasonable medical benefits. Tenn. Code Ann. § 50-6-204(a)(1)(A). An employer may risk being required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury as required by Tennessee Code Annotated section 50-6-204(a)(1)(A). *Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016).

Mr. Dingus's injury required extensive medical treatment for his leg and back, including multiple surgeries. His medical bills totaled $414,149.20. Per *Young,* Grand Piano shall pay the providers listed in collective exhibit one under the fee schedule. It shall also provide ongoing medical care with Drs. Kominek and Waldrop, who remain his authorized treating physicians.

Mr. Dingus also seeks temporary disability benefits. For these benefits, he must establish: "(1) that he became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of disability." *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Dr. Kominek testified that Mr. Dingus was unable to work from the date of his injury until the present. However, temporary benefits end whenever an injured worker is placed at maximum medical improvement. Tenn. Code Ann. § 50-6-234(b). She placed Mr. Dingus at maximum medical improvement on September 15, 2023. Therefore, the Court finds that Mr. Dingus was unable to work and holds he is entitled to temporary disability benefits from October 17, 2021, until September 15, 2023, at a compensation rate of $437.41. The Court holds he is entitled to 99 weeks and four days of temporary total disability benefits or $43,553.55.

Turning now to permanent partial disability benefits, these are appropriate if a physician assigns a permanent impairment but the employee can still work. Tenn. Code Ann. § 50-6-207(3)(A). The evidence shows that Dr. Komenik gave Mr. Dingus a 12% impairment, and Dr. McGarry gave a 3% rating, which equates to a 15% impairment under the combined rating chart using the AMA Guides, Sixth Edition.[7] Based on the 15% rating, the Court holds that Mr. Dingus is entitled to 67.5 weeks of permanent partial disability benefits or $29,525.17. His initial period of benefits ends on January 1, 2025.

---

[7] The Court obtained the ratings from the deposition and medical records, which were entered without objection.

6

**IT IS, THEREFORE, ORDERED** as follows:

1. Grand Piano shall provide Mr. Dingus with medical treatment for his work injuries under Tennessee Code Annotated section 50-6-204. Drs. Waldrop and Kominek shall be the authorized treating physicians.

2. Grand Piano shall pay for past reasonable and necessary medical expenses that are causally related to Mr. Dingus's October 16, 2021 work injury under the Bureau's Medical Fee Schedule.

3. Grand Piano shall pay $43,553.55 lump-sum for temporary total disability benefits from October 17, 2021, through September 15, 2023. Mr. Dingus's counsel is entitled to a 20% attorney fee, or $8,710.60 under Tennessee Code Annotated section 50-6-226(a)(1). Grand Piano shall deduct $15,201.52 from Mr. Dingus's temporary total disability award and pay this to the State of Tennessee-Child Support Services as referenced in exhibit 20 under Tennessee Code Annotated section 50-6-223.

4. Grand Piano shall pay Mr. Dingus an original award of permanent partial disability for 67.5 weeks at $437.41 weekly, or $29,525.17. Mr. Dingus's counsel is entitled to a 20% attorney fee or $5,905.03.

5. Grand Piano shall prepare and file a statistical data form within ten business days of the date of this order becoming final.

6. The filing fee of $150.00 is taxed to Grand Piano and must be paid within five business days of this order becoming final.

7. Unless appealed, the order shall become final 30 days after issuance.

**ENTERED June 5, 2024.**

/s/ Brian K. Addington

_____

**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

# Appendix

Exhibits:

1. Collective Exhibit of Medical Bills
2. Collective Exhibit of Medical Records
   a. Johnson City Medical Center
   b. Appalachian Orthopedics
   c. BHMA Neurosurgery Spine and Rehab
   d. McGarry Orthopedics
3. Tennessee OSHA Report
4. Deposition of Dr. Selma Kominek
5. Page 73 of the Grand Employee Handbook
6. Safety Harness Policy
7. OSHA Operator's Safety Training Program
8. Grand Workers' Compensation Incident Report
9. Job Duties and Performance Standards Acknowledgement
10. Manager/Employee Safety Orientation Checklist
11. Certificate of Achievement for Completion of OSHA Compliant Operator Safety Training Program
12. Grand Home Furnishings Employee Handbook
13. State of Tennessee Income Withholding Statement
14. Employee's Responses to First Request for Admissions
15. Social Security Administration Disability Decision
16. Employee Acknowledgement and Understanding/Grand Home Furnishings Employee Handbook with Harassment and Discrimination Policy and Safety Program.
17. Termination Letter
18. Curriculum Vitae of Dr. Timothy McGarry
19. Collective Photographs
20. Updated Lien TN-Child Support Services
21. Collective Exhibit Written Warnings
22. Collective Exhibit Photographs

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on June 5, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Michael Muncy, Employee's Attorney | | | X | mike@munseyinjurylaw.com jackie@munseyinjurylaw.com |
| Gerard Jabaley, Employer's Attorney | | | X | gjabaley@wimberlylawson.com aburge@wimberlylawson.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

9



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____
*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*